**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**BROOKLYN DIVISION**

| | |
|---|---|
| KARLENE ARNOLD, Individually and for Others Similarly Situated<br><br>v.<br><br>METROPOLITAN JEWISH HEALTH SYSTEM, INC. | Case No. 1:26-cv-1127<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

# CLASS AND COLLECTIVE ACTION COMPLAINT

## SUMMARY

1. Karlene Arnold brings this class and collective action to recover unpaid overtime and other damages from Metropolitan Jewish Health System, Inc. (MJHS) under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL).

2. MJHS employs Arnold as one of its Straight Time Employees (defined below).

3. MJHS pays the Straight Time Employees by the hour.

4. The Straight Time Employees regularly work more than 40 hours in a workweek.

5. But MJHS does not pay the Straight Time Employees overtime wages.

6. Instead, MJHS pays the Straight Time Employees the same hourly rate for all hours worked, including hours after 40 in a workweek (MJHS's "straight time for overtime pay scheme").

7. MJHS's straight time for overtime pay scheme deprives the Straight Time Employees of the "time and a half" overtime premium wages owed for hours worked after 40 in a workweek.

8. Additionally, MJHS's straight time for overtime pay scheme renders its pay statements inaccurate, incomplete, and/or non-compliant with NYLL § 195(3).

9. Similarly, MJHS failed to provide the Straight Time Employees with accurate and/or compliant written notices, as required by NYLL § 195(1).

## JURISDICTION & VENUE

10. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11. The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

12. This Court has general personal jurisdiction over MJHS because MJHS is domestic corporation.

13. Venue is proper because MJHS maintains its principal place of business in Brooklyn, New York, which is in this District. 28 U.S.C. § 1391(b)(1).

## PARTIES

14. Arnold is a Registered Nurse (RN) employed by MJHS.

15. MJHS pays Arnold under its straight time for overtime pay scheme.

16. Arnold's written consent is attached as **Exhibit 1**.

17. Arnold brings this action on behalf of herself and similarly situated MJHS employees.

18. The putative FLSA collective is defined as:

> **All hourly employees who MJHS employed under its straight time for overtime pay scheme during the past 3 years through final resolution of this action (the "FLSA Collective Members").**

19. Arnold also seeks to represent a class under the NYLL pursuant to FED. R. CIV. P. 23.

20. The putative New York class is defined as:

> **All hourly employees who MJHS employed under its straight time for overtime pay scheme, while working in New York at any time during the past in the past 6 years and 228 days[1] through final resolution of this action (the "New York Class Members").**

---

[1] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from

21. The FLSA Collective Members and New York Class Members are collectively referred to as the "Straight Time Employees."

22. MJHS is a New York non-profit corporation.

23. MJHS may be served with process by serving its registered agent: **Corporation Service Company, 80 State Street, Albany, New York 12207**.

**COVERAGE UNDER THE FLSA**

24. At all relevant times, MJHS was an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

25. At all relevant times, MJHS, was as an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

26. At all relevant times, MJHS "engaged in the operation of a hospital" and/or operated "an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution."

27. MJHS also has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials, such as cellphones, computers, medical tools and equipment, personal protective equipment, etc., that have been moved in or produced for commerce.

28. At all relevant times, MJHS's annual gross volume of sales made or business done exceeded $1,000,000.

29. MJHS thus qualifies as an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1).

---

March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

30. At all relevant times, Arnold and the Straight Time Employees were MJHS's "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e).

31. At all relevant times, the Straight Time Employees were engaged in commerce or in the production of goods for commerce.

## FACTS

32. MJHS touts itself as a "provider of health care programs and services across the greater New York area … [that] provides a range of care programs and services … [including] skilled nursing care at home, short-term rehabilitation, long-term care, care in [its] skilled nursing centers, hospice and palliative care, health plans for Medicare, Medicaid or dual Medicare and Medicaid eligible beneficiaries."[2]

33. MJHS advertises open positions across its system and solicits applications for these open positions through its website.[3]

34. To meet its business objectives, MJHS hires healthcare providers, like Arnold and the other Straight Time Employees, to care for patients.

35. For example, MJHS hired Arnold as an RN in its Isabella Center in February 2025.[4]

36. MJHS states that "[o]n the campus of Isabella, we offer independent living options for adults 62 and older."[5]

37. Arnold's job duties include providing patient care, such as administering vaccines, assessing patients, assisting with admissions, providing wound care, checking vitals, charting treatments, and assisting other patient care staff.

---

[2] https://www.mjhs.org/about/ (last visited February 3, 2026).
[3] https://mjhs.jobs/jobs/ *and* https://mjhs.jobs/isabella-center.html (last visited February 3, 2026).
[4] *See*, https://www.mjhs.org/about/mjhs-isabella-center/ (last visited February 3, 2026).
[5] https://www.mjhs.org/about/(last visited February 3, 2026).

38. MJHS pays Arnold approximately $80 an hour.

39. Arnold reports her "on the clock" hours to MJHS.

40. Arnold regularly works more than 40 hours a week.

41. Indeed, Arnold typically works approximately 8 to 12 hours a day, 7 days a week (56 to 84 hours a week) "on the clock."

42. MJHS knows Arnold regularly works more than 40 hours a week but does not pay her overtime.

43. Instead, MJHS pays her under its straight time for overtime pay scheme.

44. Specifically, MJHS pays her the same hourly rate for all hours worked, including hours over 40 in a workweek.

45. MJHS does not pay Arnold the required "time and a half" overtime for hours worked after 40 a workweek.

46. For example, during the bi-weekly pay period April 12, 2025, Arnold worked 177.95 hours "on the clock" and MJHS paid her the same $80 an hour for all 177.95 hours worked:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regpay | 80.0000 | 177.95 | 14,236.00 | 52,389.60 |
| Per Diem | | | | 8,520.00 |
| Gross Pay | | | $14,236.00 | 61,509.60 |

47. MJHS pays its other Straight Time Employees under the same straight time for overtime pay scheme it imposes on Arnold.

48. Like Arnold, MJHS pays the other Straight Time Employees by the hour.

49. Arnold and the Straight Time Employees perform their jobs under MJHS's supervision and use materials, equipment, and technology MJHS approves and supplies.

50. MJHS requires Arnold and the Straight Time Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

51. At the end of each pay period, Arnold and the Straight Time Employees receive wages from MJHS that are determined by common systems and methods MJHS selects and controls.

52. MJHS requires Arnold and the Straight Time Employees to record their "on the clock" hours using MJHS's timekeeping system.

53. MJHS's records show the other Straight Time Employees regularly work more than 40 hours a workweek.

54. Indeed, like Arnold, the Straight Time Employees typically work 56 to 84 hours a workweek "on the clock."

55. Arnold and the other Straight Time Employees work the schedule set by MJHS.

56. But when Arnold and the Straight Time Employees work more than 40 hours in a workweek, MJHS does not pay them overtime wages of at least 1.5 times their regular rates of pay.

57. MJHS only pays Arnold and the Straight Time Employees straight time for overtime.

58. MJHS only pays Arnold and the other Straight Time Employees for the hours the "on the clock" hours they actually work.

59. Making matters worse, MJHS did not provide Arnold with accurate and compliant written notice of all information required by NYLL § 195(1) at the time of her hiring.

60. MJHS's wage notice gave an inaccurate regular rate of pay and overtime rate of pay.

61. MJHS provides similarly noncompliant wage notices to the other Straight Time Employees.

62. Arnold and the other Straight Time Employees were injured due to MJHS's failure to provide the wage notices required by NYLL § 195(1).

63. MJHS also fails to provide Arnold accurate, itemized wage statements as required by NYLL § 195(3).

64. Specifically, MJHS's itemized wage statements do not show Arnold's overtime rate of pay as at least 1.5 times her regular rate of pay and do not show all hours she worked.

65. MJHS provides noncompliant wage statements to the other Straight Time Employees.

66. Each pay period, MJHS provides the Straight Time Employees with wage statements showing inaccurate overtime rates.

67. MJHS's failure to provide accurate and compliant wage notices, as required under NYLL § 195(1), caused Arnold and the other Straight Time Employees to suffer informational harm and prevented them from knowing whether, and to what extent, MJHS underpaid them.

68. MJHS's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Arnold and the other Straight Time Employees of the ability to ensure MJHS made proper payroll tax deductions on their behalf.

69. MJHS's failure to provide accurate and compliant wage notices as required by NYLL § 195(1) deprived Arnold and the other Straight Time Employees of the ability to ensure MJHS made proper deductions from their pay in the correct amounts.

70. MJHS's failure to provide wage statements as required by NYLL § 195(3) concretely injured Arnold and the other Straight Time Employees.

71. MJHS's failure prevented Arnold and the other Straight Time Employees from knowing whether, and to what extent, MJHS underpaid them.

72. MJHS's failure to provide accurate and compliant itemized wage statements prevented the Straight Time Employees from ensuring MJHS made required payroll tax deductions.

73. It also deprived Arnold and the other Straight Time Employees of the ability to ensure MJHS made other deductions from their pay in the correct amounts.

74. MJHS's willful violations of NYLL § 195(1) and (3) prevented Arnold and the other Straight Time Employees from taking action to correct MJHS's NYLL violations (e.g., underpayment

of overtime wages) at an earlier time, resulting in numerous workweeks for which the Straight Time Employees were deprived of the time value of their earned wages and numerous workweeks for which they are now time-barred from recovering their earned wages.

75. MJHS's wage notices and itemized wage statements told the Straight Time Employees they had been paid all the wages they were owed when, in fact, MJHS owes them additional wages.

76. MJHS's false, deceptive, and/or misleading wage notices and itemized wage statements concretely harmed Arnold and the other Straight Time Employees by falsely informing them they had been paid in full for their labor when, in fact, they are owed additional wages.

77. MJHS hid its NYLL violations and prevented or impeded Arnold and the other Straight Time Employees from obtaining full payment of wages owed to them in a timely fashion.

78. Throughout their employment, the Straight Time Employees relied—to their detriment—on MJHS's representations regarding full payment of wages.

79. Had MJHS provided accurate and legally compliant wage noticed and itemized wage statements, Arnold and/or other Straight Time Employees would have undertaken self-advocacy and/or brought an earlier action to recover such unpaid wages.

80. But for MJHS's false, deceptive, and/or misleading wage notices and itemized wage statements, Arnold and the Straight Time Employees would have avoided the lost time-value of their unpaid wages by recovering sooner.

81. Put simply, had MJHS complied with NYLL § 195(1) and (3), the Straight Time Employees would have known MJHS owed them overtime and could have pursued payment.

## Class and Collective Action Allegations

82. Arnold brings this case as a Rule 23 class action and an FLSA collective action.

83. The Straight Time Employees were victimized by MJHS's pattern, practice, and/or policy that deprived these employees of overtime wages for all overtime hours worked.

84. Other Straight Time Employees worked with Arnold and indicated they were paid in the same or similar manner, performed similar work, and were subject to MJHS's same illegal policies.

85. Based on her experiences with MJHS, Arnold is aware its illegal practices were imposed on other Straight Time Employees.

86. The Straight Time Employees are similarly situated in all relevant respects.

87. Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purpose of determining their entitlement to overtime compensation.

88. Therefore, the specific job titles or locations of the Straight Time Employees do not prevent class or collective treatment.

89. Rather, the Straight Time Employees are held together by MJHS's straight time for overtime pay scheme, which systematically deprives them of overtime wages for overtime hours worked.

90. The Straight Time Employees are similarly denied overtime compensation for overtime hours worked.

91. The back wages owed to Arnold and the Straight Time Employees will be calculated using the same formula applied to the same records.

92. Arnold's experiences are typical of the experiences of the other Straight Time Employees.

93. Arnold has no interest contrary to, or in conflict with, the other Straight Time Employees that would prevent class or collective treatment.

94. Arnold has an interest in obtaining the unpaid wages and damages owed to the Straight Time Employees under state and federal law.

95. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

96. Absent this class and collective action, many Straight Time Employees will not obtain redress for their injuries and MJHS will reap the unjust benefits of violating the FLSA and NYLL.

97. Further, even if some of the Straight Time Employees could afford individual litigation against MJHS, it would be unduly burdensome to the judicial system.

98. Concentrating the litigation in one forum will promote judicial economy, consistency, as well as parity among the claims of the Straight Time Employees.

99. The questions of law and fact that are common to each Straight Time Employee predominate over any questions affecting solely the individual members.

100. Among the common questions of law and fact are:

a. Whether MJHS paid the Straight Time Employees the same hourly rate for all hours worked, including hours in excess of 40 in a workweek;

b. Whether MJHS failed to provide wage notices at the beginning of the Straight Time Employees' employment that included accurate and/or complete categories of information as required under NYLL § 195(1);

c. Whether MJHS failed to provide itemized wage statements to the Straight Time Employees that included accurate and/or complete categories of information as required under NYLL § 195(3);

d. Whether Isabela's decision to not pay the Straight Time Employees at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek was made in good faith; and

e. Whether MJHS's violations of the FLSA and NYLL were willful.

101. There are many similarly situated Straight Time Employees who have been denied overtime wages of at least 1.5 times their regular rates of pay—based on all

remuneration—in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

102. The Straight Time Employees are known to MJHS, are readily identifiable, and can be located through MJHS's business and personnel records.

**MJHS's Violations Were Willful**

103. MJHS knew it was subject to the FLSA's overtime provisions.

104. MJHS knew it paid the Straight Time Employees by the hour.

105. MJHS knew the law requires it to pay non-exempt employees, including the Straight Time Employees, overtime wages of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked after 40 in a workweek.

106. MJHS knew each Straight Time Employee worked more than 40 hours in at least one workweek during the last 6 years and 228 days because it recorded their "on the clock" hours worked via its timekeeping system.

107. MJHS knew the NYLL required it to provide itemized notices regarding the timing, frequency, calculation, amount, etc. of earned wages to the Straight Time Employees that complied with NYLL §§ 195(1) and (3).

108. MJHS's failure to pay its Straight Time Employees overtime wages of at least 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek and failure to provide required notice under the NYLL was not reasonable or in good faith.

109. MJHS knowingly, willfully, and/or in reckless disregard carried out its straight time for overtime pay scheme that systematically deprived the Straight Time Employees of overtime wages, in violation of the FLSA and NYLL.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA (FLSA COLLECTIVE)

110. Arnold brings her FLSA claim as a collective action on behalf of herself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

111. MJHS violated, and is violating, the FLSA by employing non-exempt employees, such as the Straight Time Employees, in a covered enterprise for workweeks longer than 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay for hours worked after 40 in a workweek.

112. MJHS's unlawful conduct harmed Arnold and the other Straight Time Employees by depriving them of the premium overtime wages they are owed.

113. Accordingly, MJHS owes the Straight Time Employees the difference between the wages actually paid and the overtime wages actually earned.

114. Because MJHS showed reckless disregard for whether its straight time for overtime scheme violates the FLSA, MJHS's violation of the FLSA was willful.

115. MJHS is also liable to the Straight Time Employees for an amount equal to all their unpaid overtime as liquidated damages.

116. Finally, the Straight Time Employees are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS (NEW YORK CLASS)

117. Arnold brings her NYLL § 195(3) claims as a class action on behalf of herself and the other similarly situated New York Class Members pursuant to FED. R. CIV. P. 23.

118. MJHS's conduct violated and continues to violate the NYLL. *See* NYLL §§ 190, *et seq.*

119. At all relevant times, MJHS was subject to the NYLL because MJHS was (and is) an "employer" within the meaning of the NYLL. NYLL § 190(3).

120. At all relevant times, MJHS employed Arnold and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL § 190(2).

121. MJHS did not provide the New York Class Members with accurate or compliant itemized wage statements as required by NYLL § 195(3).

122. With each payment of wages, MJHS fails to provide the New York Class Members with an accurate statement listing the categories of information required by NYLL § 195(3):

a. The dates of work covered by that payment of wages;

b. Name of employee;

c. Name of all employees;

d. Address and phone number of each employer;

e. Rate or rates of pay and basis thereof, whether the employee is paid by the hour, shift, day, week, salary, piece, commission, or other;

f. Gross wages;

g. Deductions;

h. Allowances, if any, claimed as part of the minimum way;

i. New wages;

j. The regular hourly rate or rates of pay;

k. The overtime rate or rates of pay;

l. The number of regular hours worked; and

m. The number of overtime hours worked.

123. MJHS provided inaccurate wage statements that understate the New York Class Members' rates of pay, gross wages, and deductions.

124. MJHS issued wage statements to Arnold and New York Class Members falsely informing them they had been paid in full and were owed no further wages.

125. MJHS's wage statement violations injured Arnold and the New York Class Members.

126. MJHS's failure to provide accurate and compliant itemized wage statements caused the New York Class Members informational harm by preventing them from learning: (1) MJHS had underpaid them; (2) the extent of the underpayment; (3) whether MJHS made proper payroll tax deductions and other deductions on their behalf each pay period.

127. It also prevented Arnold and the New York Class Members from taking action to correct MJHS's wage and hour violations at an earlier time, resulting in both the loss of the time value of earned wages and causing other workweeks to be barred by the statute of limitations.

128. MJHS willfully violated NYLL § 195(3) by providing wage statements informing Arnold and the New York Class Members they were paid all wages owed when, in fact, they were owed additional overtime wages.

129. By failing to provide them with statutorily-required wage information about the wages MJHS owed them, MJHS hid its violations of the NYLL and took advantage of these employees' lack of legal sophistication.

130. Due to these violations, MJHS owes Arnold and each of the New York Class Members $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Member, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

## <u>COUNT III</u>

## FAILURE TO PROVIDE ACCURATE WAGE NOTICES
## (NEW YORK CLASS)

131. Arnold brings her NYLL § 195(1) claims as a Rule 23 class action.

132. MJHS's conduct violated and continues to violate the NYLL. See NYLL § 190, *et seq*.

133. At all relevant times, MJHS was subject to the NYLL because MJHS was (and is) an "employer" within the meaning of the NYLL. NYLL § 190(3).

134. At all relevant times, MJHS employed Arnold and each New York Class Member as its covered "employees" within the meaning of the NYLL. NYLL §§ 190(2).

135. MJHS failed to provide Arnold and New York Class Members with a written notice upon hire containing the following categories of information required by NYLL § 195(1):

a. The rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;

b. For non-exempt employees like Arnold and New York Class Members, the overtime rate of pay;

c. Allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;

d. The regular pay day designated by the employer;

e. The name of the employer;

f. Any "doing business as" names used by the employer;

g. The physical address of the employer's main office or principal place of business, and a mailing address if different;

h. The telephone number of the employer; and

i. Regular hourly rate and overtime rate of pay;

136. Instead, MJHS's wage notices falsely "informed" Arnold and the New York Class Members of understated (or left unstated) their rates of pay, including overtime rates of pay, and the basis thereof, that disguised the fact MJHS underpaid overtime wages to them.

137. MJHS's failure to provide compliant notices injured the New York Class Members.

138. MJHS's failure to provide accurate and compliant wage notices as required under NYLL § 195(1) prevented Arnold and the New York Class Members from knowing the rates of pay they were owed.

139. MJHS's failure to provide accurate and compliant wage notices prevented the New York Class Members from: (1) ensuring MJHS made proper payroll tax deductions on their behalf each pay period; (2) ensuring MJHS made other required deductions in the correct amounts each pay period; (3) taking action to correct MJHS's wage and hour violations at an earlier time (resulting in multiple workweeks becoming time-barred).

140. MJHS hid its violations of the NYLL and took advantage of these employees' lack of legal sophistication by failing to provide them with statutorily-required wage information.

141. MJHS harmed the New York Class Members by issuing false, deceptive, and/or misleading wage notices.

142. Had MJHS provided accurate and legally compliant wage notices to Arnold, Arnold would have acted sooner, whether through self-advocacy and/or filing an action for unpaid wages.

143. MJHS's wage notice violations cost the New York Class Members the time value of their unpaid wages, which could have been recovered sooner.

144. Due to these violations, MJHS owes Arnold and each New York Class Member $250 for each workday that the violations occurred, up to a total of $5,000 per New York Class Member, and reasonable attorneys' fees and costs incurred in this action. NYLL § 198(1-d).

## JURY DEMAND

145. Arnold demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Arnold, individually and on behalf of the Straight Time Employees, seeks the following relief:

a. An Order designating this lawsuit as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all FLSA Collective Members with instructions to permit them to assert timely FLSA claims in this action by filing written consents;

b. An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

c. An Order appointing Arnold and her counsel to represent the interests of the New York Class Members;

d. An Order pursuant to Section 16(b) of the FLSA finding MJHS liable for unpaid back wages due to Arnold and the FLSA Collective Members, plus liquidated damages in an amount equal to their unpaid compensation;

e. An Order pursuant to the NYLL finding MJHS liable for penalties and damages due to Arnold and the New York Class Members;

f. Judgment awarding Arnold and the Straight Time Employees all unpaid wages, penalties, and other damages available under the FLSA and NYLL;

g. An Order awarding attorney's fees, costs, and expenses;

h. Pre- and post-judgment interest at the highest applicable rates; and

i. Such other and further relief as may be necessary and appropriate.

Dated: February 26, 2026

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Richard J. (Rex) Burch*
Richard J. (Rex) Burch
NY Reg. No. 6154876
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Fax
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE STRAIGHT TIME EMPLOYEES**